Matter of Kulak (2022 NY Slip Op 04025)

Matter of Kulak

2022 NY Slip Op 04025

Decided on June 22, 2022

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 22, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
CHERYL E. CHAMBERS, JJ.

2019-04919

[*1]In the Matter of Andrew H. Kulak, admitted as Andrew Harris Kulak, an attorney and counselor-at-law. Grievance Committee for the Ninth Judicial District, petitioner; Andrew H. Kulak, respondent. (Attorney Registration No. 1655067)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Ninth Judicial District. The Grievance Committee commenced this disciplinary proceeding pursuant to 22 NYCRR 1240.8 against the respondent by the service and filing of a notice of petition and a verified petition, both dated April 25, 2019, and the respondent served and filed a verified answer dated June 25, 2019. Subsequently, the Grievance Committee served and filed a statement of disputed and undisputed facts, dated July 15, 2019, and the respondent filed a response to the statement of disputed and undisputed facts, dated August 2, 2019. By decision and order of this Court dated August 15, 2019, the issues raised were referred to John J. Halloran, Jr., as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the First Judicial Department on January 14, 1980, under the named Andrew Harris Kulak.

Diana Maxfield Kearse, Acting Chief Counsel, White Plains, NY (Antonia Cipollone of counsel), for petitioner.
Foley Griffin, LLP, Garden City, NY, (Chris McDonough of counsel), for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Ninth Judicial District served the respondent with a verified petition dated April 25, 2019, containing 27 charges of professional misconduct. The respondent filed a verified answer dated June 25, 2019. The verified petition was subsequently amended, on consent, on September 2, and November 21, 2020. The Grievance Committee served and filed a statement of disputed and undisputed facts on July 15, 2019, to which the respondent filed a response. By decision and order of this Court dated August 15, 2019, pursuant to 22 NYCRR 1240.8(b)(1), the issues raised in the statement of disputed and undisputed facts, and the response thereto, as well as any evidence in mitigation and/or aggravation, were referred to the John J. Halloran, Jr., as Special Referee, to hear and report. A pre-hearing conference was held on October 18, 2019. After hearings held on June 4, 2020, and September 17, 2020, the Special Referee submitted a report in which he sustained all charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent, through counsel, has filed an [*2]affirmation in which he does not dispute the findings of the Special Referee that sustained the charges, and requests that the Court impose a sanction no greater than a public censure.
The Petition
At all times relevant herein, the respondent was a signatory to an attorney escrow account maintained at Chase Bank, entitled "IOLA-KULAK & ZASLOWSKY Attorney at Law," (hereinafter escrow account) account number ending in 9065.
The Hughes Environmental Matter (Charges One through Six)
On or about November 3, 2016, the respondent deposited $15,549.35 into his escrow account received on behalf of his client, Hughes Environmental (hereinafter Hughes), in connection with a collection matter between Hughes and Meadowlands Hospital (hereinafter Meadowlands). Of this sum, the respondent was entitled to a fee of $4,664.80, leaving the $10,884.55 balance due his client. Thereafter, between November 2016 through January 2017, the respondent disbursed the funds owed to Hughes to himself. As a result, prior to disbursing any funds to Hughes, the balance in the respondent's escrow account fell to $9,657.14 on November 17, 2016, and was reduced to $45.93 by March 17, 2017, below the sum he was required to maintain. Subsequently, the respondent disbursed the funds owed to Hughes, however, he did not do so until March 18, 2019, more than two years after first receiving the funds.
Based on the foregoing, the respondent is alleged to have misappropriated client funds (charge one), breached his fiduciary duty to safeguard funds entrusted to him incident to the practice of law (charge two), failed to keep funds belonging to another person received incident to the practice of law in an account maintained in a banking institution (charge three), and failed to promptly pay funds in his possession in which a client had an interest (charge four), in violation of rule 1.15(a), (b)(1) and (c)(4) of the Rules of Professional Conduct (22 NYCRR 1200.0).
Charges five and six, as amended, allege that the respondent engaged in dishonesty, fraud, deceit, or misrepresentation, and conduct that adversely reflects on his fitness as a lawyer in connection with the Hughes matter, in violation of rule 8.4(c) and (h) of the Rules of Professional Conduct, as follows:
By letter dated January 22, 2018, the respondent was asked by the Grievance Committee to account for activity reflected in his escrow account for the period of September 1, 2016, through March 31, 2017, which included funds deposited relating to the Hughes matter. By letter dated February 7, 2018, the respondent allocated two disbursements related to the Hughes matter, however, he failed to provide any additional information. By letter dated February 15, 2018, the respondent was again asked by the Grievance Committee to account for the activity in his escrow account. By letter dated March 19, 2018, the respondent advised the Grievance Committee that the funds regarding the Hughes matter were not disbursed because the client advised him of the Meadowland's bankruptcy and that he could not disburse the funds until the bankruptcy was resolved as a preferential payment issue may arise. Subsequently, by letter dated July 30, 2018, the respondent was asked by the Grievance Committee to advise if the bankruptcy had been resolved and to provide proof regarding same. In response, by letter dated August 27, 2018, the respondent advised that the question of the bankruptcy had not yet been resolved.
Thereafter, by letter dated November 15, 2018, the respondent advised the Grievance Committee that he had in fact previously withdrawn $858 of the Hughes funds on November 3, 2016, as a partial fee, but provided no further information as to the Hughes funds and failed to address the subject bankruptcy. By letter dated January 14, 2019, the respondent advised the Grievance Committee that both the remainder of his fee for the Hughes transaction, as well as the $10,884.55 owed to his client, had also been previously withdrawn from the escrow account through multiple disbursements, however, he did not provide the dates of the specific disbursements. The respondent further explained that he placed his client's portion of the funds in a safe deposit box he shared with his wife at Chase Bank, but otherwise failed to provide additional information regarding the Hughes disbursements until March 14, 2019. During the above period of time, Meadowlands had not filed for bankruptcy.
Additional Misappropriation (Charges Seven, Fourteen through Nineteen, and Twenty-Three)
The respondent is alleged to have misappropriated client funds, in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows:
Barone Matter (Charge Seven)
On or about October 14, 2016, the respondent deposited $164 into his escrow account [*3]in connection with the Barone v Delvecchio matter (hereinafter the Barone matter). On or about October 21, 2016, prior to any other disbursements in the matter, the balance in the respondent's escrow account was $49.09, below the sum he was required to maintain. Furthermore, between October 19, 2016, and February 2, 2017, the respondent disbursed a total of $314 from his escrow account in connection with the Barone matter, despite having only received $164 in connection with the matter.
In a separate transaction, on or about February 16, 2017, the respondent deposited the sum of $174 into his escrow account received in connection with the Barone matter, of which $150 represented his client's share of the proceeds. Prior to disbursing these funds to his client on April 24, 2017, the balance in the respondent's escrow account as of March 1, 2017, was $26.88, below the sum he was required to maintain.
502 Bar Restaurant Matter (Charge Fourteen)
Between September 6, 2016, and December 28, 2017, the respondent received a total of $1,500 on behalf of his client, 502 Bar Restaurant. Following a disbursement in connection with the matter, the respondent was required to maintain a balance of $1,300 in his escrow account in connection with his representation of 502 Bar Restaurant. However, on January 5, 2017, the balance in the respondent's escrow account was $219.71, and on January 9, 2017, the balance was $159.71, below the sum he was required to maintain.
Thereafter, following a subsequent deposit and disbursement in connection with the matter, the respondent was required to maintain a balance of $1,340 in his escrow account. Despite this, on March 1, 2017, the balance in the respondent's escrow account was $26.88, below the sum he was required to maintain.
Barry Matter (Charge Fifteen)
As of October 19, 2016, the respondent had deposited a total of $720 into his escrow account in connection with the Rosen Barry matter, $618 of which he was required to maintain as his client's portion of the proceeds. Prior to disbursing the funds owed to his client, on October 20, 2016, the balance in the respondent's escrow account was $504.09, below the sum the he was required to maintain. Thereafter, on or about December 28, 2016, the respondent withdrew the sum of $618 held on behalf of his client by way of a check payable to his firm.
Barry II Matter (Charge Sixteen)
On February 14, 2017, the respondent deposited the sum of $400 into his escrow account in connection with a second Rosen Barry matter (hereinafter the Barry II matter), $350 of which represented his client's portion of the proceeds. Thereafter, on or about February 15, 2017, the respondent withdrew the $350 held on behalf of his client by way of a check payable to his firm.
On February 23, 2017, the respondent deposited an additional sum of $300 into his escrow account in connection with the Barry II matter. Notwithstanding, by February 28, 2017, the balance in the respondent's escrow account fell to $146.88, below the sum he was required to maintain.
McNamee Matter (Charge Seventeen)
On September 21, 2016, the respondent deposited the sum of $600 into his escrow account representing funds owed to the respondent in connection with the Abednego McNamee matter. Thereafter, between September 21, and December 16, 2016, the respondent disbursed a total of $1,699.72 in connection with this matter, resulting in an over disbursement in the amount of $1,099.72.
Santos Matter (Charge Eighteen)
Between September 9, 2016, and March 20, 2017, the respondent deposited funds totaling $1,895.07 into his escrow account in connection with the Santos v Santana-Bienstock matter. Thereafter, the balance in the respondent's escrow account fell below what he was required to maintain, which included on September 26, 2016, when the balance in the account was $50.10; and on March 1, 2017, when the balance in the account was $26.88.
Tom Cat Matter (Charge Nineteen)
On or about January 19, 2017, the respondent deposited the sum of $1,250 into his escrow account in connection with the Tom Cat v Hot Weight matter. Thereafter, the respondent disbursed funds totaling $672 in connection with the matter, thereby reducing the funds required to be on deposit to $578 as of January 31, 2017. Despite this, the balance in the respondent's escrow account fell below what he was required to maintain, including a balance of $542.18 as of February 3, 2017, and a balance of $26.88 on March 1, 2017.
Northstar Matter (Charge Twenty-Three)
Between September 19, 2016, and January 30, 2017, the respondent deposited funds totaling $4,000 into his escrow account in connection with the Trooper Foods/Northstar Manor matter. Prior to any disbursements for this matter, the balance in the respondent's escrow account as of February 3, 2017, was $542.18, below the sum he was required to maintain. Thereafter, following a disbursement in the matter, the respondent was required to maintain a balance of $2,330 in connection with the matter. Despite this, on March 1, 2017, the balance in the respondent's escrow account was $26.88, below the sum he was required to maintain.
Failure to Safeguard Funds (Charges Eight through Twelve, and Twenty through Twenty-Two)
The respondent is alleged to have breached his fiduciary duty to safeguard client funds in violation of rule 1.15(a) of the Rules of Professional Conduct, as follows:
Estate of Ida Greenberg Matter (Charge Eight)
On or about March 27, 2017, the respondent deposited the sum of $5,318.09 into his escrow account in connection with the Estate of Ida Greenberg, which represented commissions due to the respondent as administrator of the estate. Between March 27, and March 31, 2017, the respondent disbursed funds totaling $5,360.25 to his firm in connection with the matter. As a result of the foregoing transactions, the respondent disbursed $42.16 more than was received in connection with the matter.
Grant Matter (Charge Nine)
On or about February 7, 2017, the respondent disbursed the sum of $275 from his escrow account to his firm representing legal fees in connection with the Grant v Smethurst matter (hereinafter the Grant matter). At the time of this disbursement, no correlating funds in connection with this matter were on deposit in his escrow account. Subsequently, on or about February 8, 2017, the respondent deposited the sum of $5,500 into his escrow account in connection with the Grant matter, which represented funds due to the respondent. The respondent thereafter disbursed an additional sum of $5,969.42 to his firm in connection with the Grant matter. As a result of the foregoing transactions, the respondent disbursed $744.42 more than was received in connection with the matter.
Hughes II Matter (Charge Ten)
On or about February 6, 2017, the respondent deposited the sum of $687.43 into his escrow account in connection with the Hughes v Atrium Senior Living matter. On or about February 6, 2017, the respondent also issued check #10823 from his escrow account payable to his firm, in the amount of $443.97, leaving a balance of $243.46 representing commissions due to local counsel. Prior to any other disbursements in the matter, the balance in the respondent's escrow account on February 15, 2017, was $200.77, below the sum he was required to maintain.
Huynh Matter (Charge Eleven)
On September 26, 2016, the respondent withdrew the sum of $321.50 from his escrow account in connection with the Huynh v Thach matter (hereinafter the Huynh matter). At the time of this disbursement, no correlating funds in connection with this matter were on deposit in his escrow account. Subsequently, between September 28, 2016, and October 6, 2016, the respondent deposited funds totaling $15,000 into his escrow account in connection with the Huynh matter, after which he disbursed an additional $14,999.93 to his firm in connection with the matter. As a result of the foregoing transactions, the respondent disbursed $321.43 more than was received in connection with the matter.
IFI Matter (Charge Twelve)
On or about January 17, 2017, the respondent deposited the sum of $400 into his escrow account in connection with the IFI v Scotto matter (hereinafter the IFI matter), $300 of which represented IFI's share of the proceeds. On or about February 1, 2017, the respondent removed the $300 held on behalf of IFI by way of a check payable to his firm. Thereafter, on or about February 22, 2017, the respondent issued a bank check drawn against his business checking account in the amount of $300 payable to IFI Distribution, LLC. On or about March 20, 2017, the respondent deposited an additional $400 into his escrow account in connection with the IFI matter, which was likewise remitted by way of his business checking account on March 20, 2017.
Bizarre Foods Matter (Charge Twenty)
Between September 23, 2016, through January 23, 2017, the respondent deposited funds totaling $2,436 into his escrow account in connection with the Bizarre Foods v Lewis Chapman matter (hereinafter the Bizarre Foods matter). Following two disbursements, the funds the respondent was required to maintain in connection with the Bizarre Foods matter on December 30, 2016, was $1,566. Despite this, the balance in the respondent's escrow account as of February [*4]3, 2017, was only $542.18, and $26.88 as of March 1, 2017, below the sum he was required to be maintain.
Trooper Matter (Charge Twenty-One)
On or about March 1, 2017, the respondent issued a check from his escrow account in the amount of $200, payable to his firm, in connection with the Damon House v Trooper matter. At the time of this disbursement, no correlating funds were on deposit in his escrow account for this matter. On or about March 2, 2017, the respondent deposited the sum of $8,500 in connection with Trooper Foods into the escrow account. Thereafter, the respondent disbursed additional funds totaling $8,682, bringing the total disbursements on behalf of this matter to $8,882, resulting in an over disbursement of $382.
Trooper II Matter (Charge Twenty-Two)
Between October 28, 2016, and February 23, 2017, the respondent deposited funds totaling $1,869 into his escrow account in connection with the Little People v Trooper-Kraft matter (hereinafter the Trooper II matter). On January 30, and January 31, 2017, the respondent removed a total of $650 held on behalf of Trooper by way of two checks payable to his firm, which he then deposited into his business account. Thereafter, on or about February 10, 2017, the respondent issued a bank check drawn against his business account in the amount of $650 payable to Trooper.
Subsequently, between February 27, and March 10, 2017, the respondent issued three additional checks totaling $700 from his escrow account in connection with the Trooper II matter, which he then deposited into his business account. The funds were subsequently remitted to Trooper on March 16, 2017, from the respondent's business account.
Failure to Account (Charges Thirteen, Twenty-Four, and Twenty-Seven)
The respondent is alleged to have breached his fiduciary duty to account for client funds, in violation of the rule 1.15 of the Rules of Professional Conduct as follows:
Charge thirteen alleges that, on or about December 16, 2016, the respondent deposited the sum of $2,600 into his escrow account in connection with the Kosofsky J-Fondanaux matter, which represented legal fees and other disbursements owed to him. The respondent, when asked to account for the disbursement of these funds by the Grievance Committee, was only able to provide information as to $1,833.15 of the $2,600 received, thereby leaving $766.85 unaccounted for in the matter.
Charge twenty-four alleges that, on or about March 31, 2017, the respondent deposited the sum of $7,314.88 into his escrow account in connection with the Waterscape Resort matter. By letters dated April 7, May 23, August 7, and August 9, 2017, and January 22, February 15, July 30, and October 3, 2018, the respondent was asked by the Grievance Committee to account for the Waterscape Resort funds, however, he failed to do so.
Charge twenty-seven, as amended, alleges that, during the period from September 1, 2016, through March 31, 2017, the respondent issued 41 checks from his escrow account payable to his firm, totaling $9,651.43. By letters dated January 22, February 15, July 30, and October 3, 2018, the respondent was requested by the Grievance Committee to identify the purpose of the disbursements and the funds against which the checks were drawn. While the respondent identified three of the checks as being issued in payment of fees to him, he could not identify the client matter nor did he provide further information regarding the other disbursed checks.
Insufficient Escrow Account Balance (Charge Twenty-Five)
On March 8, 2017, a check issued by the respondent in the amount of $857 from his escrow account was presented for payment at a time when insufficient funds were on deposit. Based on the foregoing, the respondent is alleged to have breached his fiduciary duty to ensure that sufficient funds were available in his escrow account prior to issuing checks therefrom, in violation of rule 1.15 of the Rules of Professional Conduct.
Improperly Titled Escrow Account (Charge Twenty-Six)
The respondent's escrow account, titled "IOLA-KULAK & ZASLOWSKY Attorney at Law," failed to include one of the three required phrases: "attorney trust account," "attorney special account," or "attorney escrow account," in violation of rule 1.15(b)(2) of the Rules of Professional Conduct.
The Hearing
By virtue of the parties' stipulation dated September 2, 2020, and his testimony at the hearing regarding the same, the respondent admitted the factual specifications supporting the charges of the verified petition. With regard to the Hughes Environmental matter, the respondent testified that he removed the Hughes funds from his escrow account, placing them first in a safe in his home, [*5]and later a safe deposit box located at Chase bank, due to a fear that they could be subject to a bankruptcy preferential payment action. The respondent testified that removing the funds from his escrow account was "wrong" and a "very poor decision," but alleged he only did so to "safeguard the money." As to the other instances when his escrow account fell below the sum he was required to maintain, the respondent testified that they were caused by his inadvertent withdrawal of fees prior to having deposited the correlating funds into the escrow account.
In regards to mitigation, the respondent testified that the misconduct was "absolutely inadvertent, unintentional and careless with no venal intent whatsoever," and attributed it to several personal and professional issues he was experiencing at the relevant time.
Findings and Conclusion
In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained all of the charges. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted.
In determining an appropriate measure of discipline, the respondent's counsel requests that the Court issue a public censure in view of the mitigation presented, including, inter alia, that no client suffered a pecuniary loss; the evidence of the respondent's good character; the personal and professional issues experienced by the respondent during the relevant time; remedial measures implemented; and the respondent's remorse. Notwithstanding the aforementioned mitigating factors, the respondent's misconduct was neither isolated nor inadvertent. The ongoing deficiencies in the respondent's escrow account, his transferring of client funds to his business account, his inadequate bookkeeping practices, and his intentional removal of client funds, show a blatant disregard for his duties as a fiduciary. In considering the appropriate measure of discipline, we have also considered the respondent's prior Admonition to be an aggravating factor.
Under the totality of the circumstances, we conclude that the respondent's conduct warrants his suspension from the practice of law for a period of two years (see Matter of Fonti, 183 AD3d 17; Matter of Podlofsky, 165 AD3d 37 ).
LASALLE, P.J., DILLON, DUFFY, BARROS and CHAMBERS, JJ., concur.
ORDERED that the motion of the Grievance Committee for the Ninth Judicial District to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Andrew H. Kulak, admitted as Andrew Harris Kulak, is suspended from the practice of law for a period of two years, commencing July 22, 2022, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than January 7, 2024. In such application (see 22 NYCRR 691.11, 1240.16), the respondent shall furnish satisfactory proof that during said period he (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11, and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Andrew H. Kulak, admitted as Andrew Harris Kulak, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Andrew H. Kulak, admitted as Andrew Harris Kulak, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Andrew H. Kulak, admitted as Andrew Harris Kulak, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Maria T. Fasulo
Clerk of the Court